**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
ECO FARMS SALES, INC., individually and on       :
behalf of all others similarly situated,         :
                                                 :
                          Plaintiff,             :       CIVIL ACTION NO.
                                                 :
v.                                               :       _____
                                                 :
XEROX CORPORATION,                               :       **Class Action Complaint**
                                                 :
                          Defendant.             :       **Jury Trial Demanded**
-------------------------------------------------------------x

Plaintiff Eco Farms Sales, Inc., by and through its undersigned counsel, on behalf of itself

and the classes of persons and entities preliminarily defined below, submits this Class Action

Complaint and alleges the following based on personal knowledge, investigation of counsel, and

information and belief:

## NATURE OF THE ACTION

1.       This is a civil action seeking monetary damages and declaratory and injunctive

relief against Defendant Xerox Corporation ("Xerox") arising from Xerox's assessment of

improper and excessive fees for printing services, equipment, and supplies.

2.       The case also challenges Xerox's practice of charging customers unwarranted fees

to end a lease agreement.

3.       Despite the approach of a more digital age, businesses still rely on printing and

copying technology.  Indeed, use of such technology is necessary for most businesses to survive

in the marketplace.

4.       Often small and mid-sized businesses rely on corporations that lease printing and

copying equipment and provide printing supplies to meet the businesses' demands.  The

substantial upfront cost of buying a large printer/copier and the fear of regular maintenance

expenses – along with aggressive sales techniques of Xerox and its rivals – induces business owners to seek out equipment lease options.

5.      Businesses rely on print/copy services companies that lease printing equipment and provide printing supplies to do so in accordance with the disclosed terms.

6.      Unfortunately, Xerox induces individuals and entities to contract for equipment and supply services without disclosing the true cost of such services.  Xerox also buries unconscionable and self-serving contractual provisions in its fine print form contract, resulting in penalties if the customer terminates the contract before its lengthy term expires.

7.      After the relationship begins, Xerox crams customers with enormous fee increases.  Xerox engages in such tactics because, once the customer signs the contract, they are put to a Hobson's choice:  (a) pay the increased fees or (b) terminate the contract and pay enormous early termination fees.

8.      At the outset of their relationship, customers and Xerox agree to certain fees for printing services.  Such fees and charges can take a variety of forms, including "print charges" levied on a per-page basis and monthly base fees for printer leases and software licenses.

9.      After terms are accepted, Xerox sends monthly billing statements to customers that reflect the prior month's activity, sometimes estimated, and specifies the fees imposed.

10.     This case also challenges the fine print terms and conditions set forth within the contract.  As explained in detail herein, through these terms and conditions, Defendant seeks to backtrack from the agreed-upon fees and rates that have actually been reviewed and approved by the business customers and Defendant asserts authority to increase the customer's fees whenever and to whatever amount it desires.  Such provisions lack mutuality, are unconscionable, and are otherwise unenforceable.  Even if enforceable, such discretionary provisions must be exercised

in good faith.

11.     Xerox utilizes form contracts and billing tactics which do not adequately identify how a customer is charged for each service provided.  For instance, in addition to Xerox charging a monthly fee for leasing printers and granting software licenses, it charges ill-defined and improperly increased per-print fees.

12.     For example, Xerox charges "print charges" on a per-page rate, based on a tiered system set by Xerox.  Xerox increases the rates charged at each tier without explanation for the increase.  Such increases are by no means based on increased costs that Xerox must pay to third parties.  These dramatic increases lead to customers being charged rates far higher than those agreed upon at the time of contracting.

13.     Furthermore, this tactic is improper because Xerox misleads customers by identifying "consumable supplies" as "included for all prints," as part of the contract's "maintenance plan features."  Xerox's subsequent behavior of imposing substantial fee increases shows that either:  (a) consumables are not in fact included; or (b) Xerox is charging customers phantom "print charges," unrelated to any true cost or service.

14.     Finally, in the alternative – and if breach of contract claims are inapplicable because the form contracts are deemed unenforceable – it would constitute unjust enrichment for Defendant to retain the improper fees.  Thus, even if breach of contract principles do not warrant recovery, Plaintiff (and the classes it seeks to represent) should be made whole.

15.     The formatting of monthly billing statements can make it difficult for small and medium-sized businesses to understand whether the fees they are being charged are proper.

16.     Unfortunately, Xerox takes advantage of this confusion.  Defendant induces customers to use its services with the promise of low, straightforward pricing, but once the

parties are doing business, Xerox sneaks in mark-ups.

17.     These increased fees are often imposed in a deceptive fashion not provided for in Defendant's agreement, such that it is very difficult for customers to even notice the increased monthly charges.  Moreover, even if a customer does notice the increased charges, they are given a very short period of time to assess their options before Xerox considers them in default of the agreement.

18.  Furthermore, Xerox demands improper, excessive, and unwarranted fees when customers seek to end their relationship with Defendant.  Defendant utilizes threats of legal action and collections to induce customers to pay these exorbitant fees unsubstantiated by law, fact, or contract.  Such practices violate the applicable New York law, breach the terms of Defendant's own form contract, are unconscionable, and have unjustly enriched Defendant at the expense of Plaintiff and the proposed classes.

19.     This case challenges the amount and nature of the fees that Defendant imposes. Such fees violate the express terms of Xerox's form lease agreement, as well as the covenant of good faith and fair dealing.  Further, Xerox's termination penalties violate the applicable New York law.

## JURISDICTION AND VENUE

20.     Xerox requires customers all over the country – including small businesses, churches, and non-profits – to sue it in Monroe County, New York.  Plaintiff could never justify the expense of doing so, but for this case being a class action, which allows legal fees and costs to be spread across the thousands of victims of Xerox's practices.

21.     Jurisdiction is proper in federal court pursuant to 28 U.S.C. § 1332(d)(2) because there are more than 100 potential class members and the aggregate amount in controversy

exceeds $5 million exclusive of interest, fees, and costs, and at least one class member is a citizen of a state other than New York.

22.     This Court has personal jurisdiction over Defendant because it is a corporation incorporated under the laws of the State of New York.  Moreover, Defendant is engaged in a continuous and systematic course of doing business in New York by offering its services to thousands of New York customers.  Further, the Xerox Corporation has a major office located in the City of Rochester, Monroe County, New York, although Defendant has its headquarters in Connecticut.

23.     Venue lies within this judicial district under 28 U.S.C. § 1391 because Defendant has an office here, conducts substantial business in this district, and a substantial portion of the events, omissions, and acts giving rise to the claims herein occurred in this district.  Moreover, Defendant's form contract with Plaintiff and the members of the classes specifies that the courts of Monroe County, New York are the only allowed forum.  Plaintiff would have sued in California had it been allowed to do so.

## THE PARTIES

24.     Plaintiff Eco Farms Sales, Inc. ("Eco") is a former customer of Xerox.  Eco is a small California corporation that primarily grows, packs, and markets avocados.  Eco is headquartered in Temecula, California.

25.     Defendant Xerox Corporation ("Xerox") is a New York corporation.  According to its website, Xerox is a Fortune 500 company valued at $11 billion and has offices in over 160 countries.  The company's stock is traded on the New York Stock Exchange.  Xerox's global headquarters is located in Norwalk, Connecticut.

5

## FACTUAL ALLEGATIONS

**A.**  **Xerox Induces Customers to Enter Long Term Contracts by Assuring Pricing and Functionality That Go Undelivered**

26.     Customers are attracted to Xerox by the prospect of avoiding costs they would pay upfront to buy new equipment.  This approach is very appealing because printing/copying equipment can be a substantial expense.  Also, maintenance of the equipment and keeping supplies on hand are hassles and lead to budgeting uncertainty.

27.     Xerox provides prospective customers with the form lease agreement which promises "maintenance services," assuring potential customers Xerox will provide repairs necessary to keep the equipment "in good working order."  Even if customers notify Xerox of equipment performance issues, or are forced to wait extended periods of time for Xerox to send a maintenance technician, or the technician is unable to return the leased equipment to suitable condition, or Xerox fails to adequately replace unsuitable equipment, Xerox refuses to allow customers to end a lease agreement, despite Xerox's provision of inadequate equipment.

**B.**  **Xerox Raises Fees Without Justification**

28.     After Xerox delivers equipment, it begins increasing charges and cramming customers with fees that are inconsistent with the agreed-upon charges that are prominently set forth in the lease agreement.

29.     Indeed, Defendant increased agreed-upon rates set forth in Eco's Lease Agreement.

30.     Xerox knows that if it disclosed these substantial, unwarranted fee increases in the lease agreement, customers would be much less likely to contract with Xerox.  Instead, Xerox crams business customers with these unanticipated fee increases after the relationship has

commenced and customers are "locked in" to long term deals that are can only be terminated by paying massive penalties.

31. Xerox describes these fees and others in a very misleading fashion so as to preclude customers from realizing the fees are improper or that they are unrelated to any legitimate cost. For example, Xerox asserts that consumable supplies are included for all printing, under the heading "maintenance plan features." However, Xerox includes fine print language allowing it to assess excess usage charges if use of consumable supplies exceeds Xerox's "published yield." Xerox fails to define or list a published yield elsewhere on the form contract.

32. Even if customers could effectively decipher Xerox's monthly statements, they would have little time to investigate before Xerox demands payment. The form contract gives customers only 15 days to tender payment to Xerox before being declared in default. In most instances, Xerox automatically debits customer accounts that have been registered for automatic payments. If payment is not received, Xerox sends demand letters requiring payment of substantial sums of money within a very short period of time. These letters also include threats of accelerating the account and suing for sums owed, with interest.

33. Xerox has a history of filing suit for collection against customers Xerox declares in default under the lease agreement. A number of cases can be cited showing Xerox's tactic of suing small businesses and organizations for substantial sums of money claimed due under the agreement. Xerox is often awarded default judgment against these small businesses which lack resources required to either defend themselves or pay the substantial sums claimed due in the first place.

C.    **Xerox Charges Unreasonable Fees to Terminate Agreements**

34.    Xerox buries a "non-cancelable agreement" clause deep within the fine print of its form contract.  This clause is an attempt by Xerox to maximize profit regardless of the circumstances.  In fact, Xerox claims the contract cannot be cancelled without the customer paying all remaining sums due on the life of the lease agreement, even if Xerox fails to perform its obligations under the contract.

35.    This contractual provision is known as a "hell or high water" clause.  Such provisions require that if a customer must end a lease agreement, all future rent payments on the lease must be made.  At the same time, Defendant demands return of the leased equipment immediately.  Presumably, Xerox has no problem finding another lessee or purchaser for the equipment, giving it a windfall.  Moreover, Xerox is the manufacturer and supplier of the leased equipment; which it mass produces and does not acquire solely for lease to a specific business.  Thus, regardless of its massive overcharges upon termination, Xerox stands to profit substantially each time it enforces its termination clause against its customers, especially when it fails to remit the fair market value of re-possessed equipment, as will be discussed below.  This Class Action Complaint does not challenge the lawfulness of the "hell or high water" clause, but Plaintiff reserves the right to make such challenge if it is later deemed proper.

36.    This Class Action Complaint challenges only Defendant's use of its form contract "hell or high water" clause in conjunction with its miscalculation of liquidated damages to overcharge Plaintiff and the members of the classes upon termination of lease agreements.  It is Xerox's practice to charge arbitrary and unreasonable termination fees, unsupported by any formula contained in the lease agreement.  Xerox provides no calculation of its claimed amounts due, yet makes threats of recovery and interest charges discussed above.  Xerox demands

8

payment of its improperly-calculated liquidated damages.   But these calculations are unwarranted and inaccurate as shown below.

37.     Xerox continues its attempt to extract money from customers, even after accepting termination of the lease agreement and payment of these arbitrary and substantial sums.  Xerox persists in demanding further payment from former customers, above and beyond sums feasibly calculated based upon the lease agreement.

38.     Courts have found such baseless assessments by Xerox to be unlawful and unwarranted.  For example, a court has found unlawful an attempt by Xerox to charge interest rates on liquidated damages that were themselves improperly calculated under a lease agreement. This Court has also denied Xerox's practice of claiming liquidated damages without explaining its calculation or providing evidence to support its determination.

**D.      Xerox's Practices Have Harmed Plaintiff and the Classes**

39.     Xerox's wrongful overbilling policies and practices described above harmed Plaintiff and members of the classes proposed below.

40.     Eco is a former business customer of Xerox that was victimized by Xerox's overbilling practices during the relevant period.  Based on the applicable New York law (made binding by Xerox through its form contract), it is likely the class period will extend for six years before the filing of this Class Action Complaint.

41.     As one example of Xerox's improper practices, Eco's Lease Agreement, signed in June 2013, specified it would be charged the following tiered print charge rates:  $.0099 for tier-one "BW CLR" prints; $.027 for tier-two "CLR LVL2" prints; and $.069 for tier-three "CLR LVL3" prints.   Nonetheless, Eco was routinely charged higher rates for these transactions, including charges 40% higher than contained in the Lease Agreement for each tier.

42.     Moreover, Xerox routinely charged Eco monthly base rates higher than those contained in the Lease Agreement, with no basis for such overcharges.

43.     Due to the unmanageable costs and fee increases imposed by Xerox, Eco sought to end its Lease Agreement with Xerox.  Furthermore, the copiers provided under the Lease Agreement were – as frequently conceded by Xerox representatives – not functioning properly, with long delays before being ready for use each morning and with frequent break-downs and attendant periods of inoperability.

44.     Eco worked with three potential providers of new print/copy equipment, one of which was Xerox, and eventually reached agreement with one of Xerox's competitors.  Eco was told by the Xerox representative that it could terminate early but that it would owe $24,609.  Eco was told that it could not terminate, nor stop Xerox's monthly overbilling, unless it paid the stated amount.  Eco did not agree with this outrageous amount but, in order to escape the overbilling and faulty and defective equipment, Eco was forced to tender payment of $24,609.  Xerox promptly deposited the check.  Xerox then provided a monthly statement showing $0 owed by Eco, thus confirming that the Lease Agreement had been terminated.  Eco's payment was thousands of dollars higher than any amount that could have been legally justified by Xerox.

45.     Several weeks later, Xerox sent a demand letter to Eco claiming an additional $11,575.65 was owed.  This demand letter failed to offer a calculation or basis for this substantial sum, yet included threats of acceleration, recovery, and interest charges.  Since Eco had already grossly overpaid to escape the Lease Agreement – which Xerox had breached in several material respects – it has not paid this latest invoice.  Xerox continues to call Plaintiff to collect this purported debt.  A call received on September 6, 2017 left a message to call Xerox

Corporation.  A return call on September 7, 2017, was answered by the voice mail of "Xerox Corporation" and its collection employee Edna Soladis.

46.     Furthermore, Xerox has failed to pay Eco the "fair market value" of the equipment, as provided for in the Lease Agreement.  The Lease Agreement specifically requires such payment by Xerox, but Xerox makes a practice of never honoring this portion of the contract.  The legal and business strategies behind Xerox's conduct are described more fully below.  Eco has performed its obligation under the Lease Agreement by promptly making the leased equipment available for Xerox's possession.  Eco expended valuable resources in order to perform its obligation.

47.     If Xerox contends the $11,575.65 referenced above is a non-arbitrary charge, Eco assumes it to be Xerox's claim to the fair market value of the formerly leased equipment.  Eco reserves the right to challenge Xerox's calculation of fair market value for the equipment leased under the Eco Lease Agreement, but contends Xerox owes Eco at least $11,575.65; which Xerox has failed to pay despite Eco's performance of its duty by making the equipment available for Xerox's repossession.

48.     As a consequence of Defendant's overbilling policies and practices, Plaintiff and the members of the classes proposed below have been wrongfully forced to pay unauthorized fees and charges.  Defendant has improperly deprived Plaintiff and the members of the proposed classes of significant funds, causing ascertainable monetary losses and damages.

## CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action on behalf of itself and all others similarly situated.

50.     The classes are preliminarily defined as follows:

All Xerox customers in the United States that paid a fee that was not authorized in their lease agreement in the six-year period prior to the filing of suit (the "Overcharge Class").

All Xerox customers in the United States that paid a termination fee or penalty in violation of their lease agreement or the applicable New York law in the six-year period prior to the filing of suit (the "Termination Class").

51.     Plaintiff reserves the right to modify or amend the definitions of these proposed Classes before the Court determines whether certification is appropriate and as the Court may otherwise allow.  For example, discovery may show it to be appropriate to certify an additional class or classes.

52.     Excluded from the Classes are Xerox, its parents, subsidiaries, affiliates, officers, and directors, any entity in which Xerox has a controlling interest, all customers who make a timely election to be excluded, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

53.     The relevant time period for each of the Classes is the number of years immediately preceding the date on which this Complaint is filed as allowed by the applicable statute of limitations, going forward into the future until such time as Defendant remedies the conduct complained of herein.  As described above, it is likely that the relevant period will begin in 2011 based on the applicable New York law.

54.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can meet all the applicable requirements of Federal Rule of Civil Procedure 23(a) and

(b)(3) and can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

55.     **Numerosity.**   The members of the Classes are so numerous that individual joinder of all the members is impracticable.   On information and belief, there are thousands of Xerox customers that have been damaged by Defendant's wrongful conduct as alleged herein.   The precise number of Class members and their addresses is presently unknown to Plaintiff, but may be ascertained from Defendant's books and records.   Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, and/or published notice.

56.     **Commonality and Predominance.**   Numerous common questions of law and fact exist as to the claims of Plaintiff and the other Class members.   Such questions include, but are not limited to:

a.      Whether Xerox has acted and continues to act improperly by imposing excessive and unauthorized fees on customers, including Plaintiff and the other Class members, for Xerox's benefit;

b.      Whether Xerox deceptively formats notices and monthly statements in order to mask the origin and imposition of unauthorized fees and charges;

c.      Whether Xerox deceptively formats its form lease agreement in order to mask Xerox's known intention to levy increased and unwarranted fees on customers;

d.      Whether Xerox has breached its contract with Plaintiff and the other Class members, either directly or via the covenant of good faith and fair dealing;

e.      Whether Xerox has charged unwarranted and unlawful termination fees;

f.      Whether certain of the lease agreement terms violate public policy, lack mutuality, are procedurally and substantively unconscionable, and are otherwise void and unenforceable;

g.      Whether Xerox is liable to Plaintiff and the other Class members for imposing improper fees; and

h.      Whether Xerox should be enjoined from engaging in any or all of the unfair practices complained of herein.

57.     Other questions of law and fact common to the Classes include:

a.      The proper method or methods by which to measure damages; and

b.      The declaratory and/or injunctive relief to which the Classes are entitled.

58.     Xerox has engaged in a common course of conduct toward Plaintiff and the other Class members.  The common issues arising from this conduct affecting Plaintiff and the other Class members predominate over any individual issues.  Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

59.     **Typicality.**  Plaintiff's claims are typical of the other Class members' claims because, among other things, all of the claims arise out of a common course of conduct and assert the same legal theories.  Further, Plaintiff and the members of the Classes were comparably injured through the uniform misconduct described above.

60.     **Adequacy of Representation.**  Plaintiff is an adequate Class representative because its interests do not conflict with the interests of the other Class members; Plaintiff has retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiff intends to prosecute this action vigorously.  Plaintiff paid significant monthly overcharges and seeks reimbursement in the same manner as all members of the Overcharge

14

Class.  Likewise, Plaintiff paid improper termination fees and requests the return of all such improperly assessed fees (and/or that Xerox cease its effort to collect such improper fees) just like all members of the Termination Class.  Class members' interests will be fairly and adequately protected by Plaintiff and its counsel.

61.  **<u>Declaratory and Injunctive Relief.</u>**  Xerox has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive and declaratory relief, as described below.

62.  **<u>Superiority.</u>**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and each of the other Class members are small compared to the burden and expense that would be required to individually litigate their claims against Xerox, thus rendering it impracticable for Class members to individually seek redress for Xerox's wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

## COUNT I

## BREACH OF CONTRACT INCLUDING BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

## ON BEHALF OF THE OVERCHARGE CLASS

63.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

64.     The actions taken by Xerox have materially violated the specific terms of its contracts with Plaintiff and the Classes.  Further, Xerox has breached the contract by violating provisions of the contract as they must be interpreted, that is in accordance with the covenant of good faith and fair dealing.  Xerox is liable for the losses of Plaintiff and the Classes that have resulted from its breaches of contract.

65.     Xerox violated the contract by assessing improper charges not provided for in the contract by unilaterally marking up agreed-upon fees and rates without legal basis and without proper notice.  Thus, Xerox has materially breached the express terms of its own form contract.

66.     Plaintiff and the members of the Classes have performed all, or substantially all, of the obligations imposed on them under the contracts, or those obligations have been waived by Xerox.

67.     Plaintiff and the Classes sustained damages as a result of Xerox's breaches of contract.

68.     New York law also imposes upon each party to a contract the duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually

obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute violations of good faith and fair dealing in the performance of contracts.

69.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.  A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

70.     By charging fees that are inconsistent with those laid out in the contract, including but not limited to, increasing the amounts of agreed-upon fees, Xerox has violated the spirit of the contract and breached the covenant of good faith and fair dealing.  Even if Xerox believed it had given itself contractual discretion to increase mark-ups and fees, or add new fees, such discretion is constrained by good faith and fair dealing and Xerox's actions do not comport with this duty.

71.     Plaintiff and the Overcharge Class have performed all, or substantially all, of the obligations imposed on them under the contract.  There is no legitimate defense for Xerox's conduct.

72.     Plaintiff and members of the Overcharge Class sustained damages as a result of Xerox's direct breaches of the contract and Xerox's breaches of contract via the covenant of good faith and fair dealing.

### ON BEHALF OF THE TERMINATION CLASS

73.     Xerox also materially breached its contract with members of the Termination Class by assessing improper fees for termination.  Xerox justifies its demands for payment based upon a liquidated damages clause in the fine print of its form contract.  However, Xerox does not follow its own formula when demanding these payments.

74.    For example, the Lease Agreement between Xerox and Plaintiff stipulates a formula for liquidated damages upon default by Plaintiff.  This formula adds "(a) all amounts then due, plus interest from the due date until paid at the rate of 1.5 [percent] per month; (b) the Minimum Payments (less the Maintenance Service and Consumable Supplies components thereof, as reflected on Xerox's books and records) remaining in the Term, discounted at 4 [percent] per annum; (c) the applicable Purchase Option; and (d) all applicable Taxes."

75.    The valuation of the components listed above at the time of Eco's termination was:

a.    $0 due at the time of terminating the Lease Agreement, as confirmed in invoices sent by Xerox to Eco indicating $0 owed and "final periodic payment";

b.    $20,816.92 which is for the number of "Minimum Payments" identified in the Lease Agreement – due from termination in March 2017 to the end of the contractual Term in June 2018, discounted at 4 percent per annum – plus 7.75 percent sales tax for state, local, and county taxes (although the assessment of taxes on such an unused service is likely improper);

c.    $0 owed for a purchase option.  The applicable purchase option value is unknown to Eco.  The Lease Agreement between Xerox and Eco provides a Purchase Option which Eco may exercise to buy the leased equipment for "fair market value" of the equipment at the end of the "initial" contractual term in June 2018.  Xerox has provided no market valuation of the equipment, but Eco believes Xerox contends it is $11,575.65 as discussed above.  Even if such value was known to Eco, and $11,575.65 is a fair valuation, Eco has not exercised its purchase option expressly or implicitly.  In fact, Eco has ceased using the equipment, moved it off-site to a storage facility nearer to Xerox's San Diego office, and made it available for Xerox's repossession; and

    d.  $0 owed for any taxes owed in addition to those already calculated above.

Therefore, the calculation of liquidated damages based upon Defendant's own formula was $20,816.93.

76. Nonetheless, Xerox demanded and accepted payment from Eco of $24,609 prior to allowing termination of the Lease Agreement.  Xerox also continues to demand an additional $11,575.65.

77. Xerox is in further breach of the contract by failing to pay Eco for any of the value of the equipment which Eco diligently made available for Xerox's possession long before the end of the leased term.  The Lease Agreement provides that if Eco makes the leased equipment available for Xerox, Eco "will receive a credit for the fair market value" of the equipment.  Eco has made the equipment available for Xerox, but Xerox has failed to uphold its end of the bargain.

78. Plaintiff and the members of the Termination Class have performed all, or substantially all, of the obligations imposed on them under the contract.  There is no legitimate defense for Xerox's conduct.

79. Plaintiff and members of the Termination Class sustained damages as a result of Xerox's direct breaches of the contract and Xerox's breaches via the covenant of good faith and fair dealing.

**COUNT II**

**UNLAWFUL PENALTIES FOR TERMINATION**

**ON BEHALF OF THE TERMINATION CLASS**

80. Plaintiff incorporates by reference all allegations above as set forth verbatim herein.

81.     As shown above, Defendant has charged Plaintiff and other members of the Termination Class substantial termination fees unrelated to the cost of past or future performance under the contract.

82.     Defendant's calculation of termination fees is greatly in excess of Defendant's harm.  Such charges are an unlawful penalty imposed by Defendant on Plaintiff and members of the Termination Class.

83.     Defendant's demand for payment from Plaintiff and other Termination Class members after termination of the contract is an unlawful attempt to penalize Plaintiff and other Class members and prevent them from exercising their legal right to cease the use of Defendant's services.  Pursuant to applicable New York, an unlawful penalty may not be assessed and is due to be returned to the victim.  In the case of Plaintiff, for example, Xerox lost no money based on the termination but actually owed money to Plaintiff for the returned equipment.  Under no circumstances could Xerox have been entitled to receive more than it would have under the remaining term of the lease, which is exactly what results from its practices regarding early termination.

84.     Plaintiff and members of the Termination Class have sustained damages as a result of Defendant's unlawful imposition of penalties for contract termination.  All such amounts should be returned to Plaintiff and the members of the Termination Class.

85.     Further, the Court should declare Xerox's continued assessment of improper termination fees unlawful under New York law and order that it cease its efforts to collect such amounts.  Xerox should be enjoined from charging excessive early termination fees and demanding payment of such fees through the threat of legal action and added damages.

## COUNT III

## UNJUST ENRICHMENT

## ON BEHALF OF THE OVERCHARGE AND TERMINATION CLASSES

86.     Plaintiff incorporates by reference all allegations above as if set forth verbatim herein.

87.     This count is brought only in the alternative to Plaintiff's claims for direct breach of contract and breach of contract via the covenant of good faith and fair dealing.  Indeed, if the contract is found to be void or unenforceable, Defendant must not be allowed to keep its ill-gotten gains.

88.     As alleged herein, Defendant was unjustly enriched at the expense of Plaintiff and the other members of the Classes, who were grossly and inequitably overcharged.

89.     Plaintiff and the other members of the Classes were unjustly deprived of money obtained by Defendant as a result of the improper and excessive fees that Defendant charged to and collected from Plaintiff and the other Class members.

90.     It would be inequitable and unconscionable for Defendant to retain the profit, benefit, and other compensation obtained from Plaintiff and the other members of the Classes as a result of its wrongful conduct alleged in this Complaint.

91.     Plaintiff and the other Class members are entitled to seek and do seek restitution from Xerox as well as an order from this Court requiring disgorgement of all profits, benefits, and other compensation obtained by Defendant by virtue of its wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the members of the Classes demand a jury trial on all claims so triable and judgment as follows:

1.      Certifying this case as a class action pursuant to Federal Rule 23;

2.      Granting declaratory and injunctive relief as set forth herein;

3.      Awarding damages in an amount to be determined by a jury;

4.      Awarding pre-judgment interest at the maximum rate permitted;

5.      Compelling disgorgement of the ill-gotten gain derived by Defendant from its misconduct;

6.      Awarding all reasonable costs incurred by Plaintiff in connection with this action, including reasonable attorney's fees pursuant to applicable law; and

7.      Awarding such other relief as this Court deems just and proper.

Dated: September 12, 2017            Respectfully submitted,

                                     WEBB, KLASE & LEMOND, LLC

                          By:     */s/ E. Adam Webb*
                                  E. Adam Webb

                                  1900 The Exchange, S.E.
                                  Suite 480
                                  Atlanta, Georgia 30339
                                  (770) 444-0773
                                  Adam@WebbLLC.com

                                  *Attorneys for Plaintiff*